1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10                              ----oo0oo----

11

12   STANLEY ELLIS,                    No. 2:22-cv-01580 WBS JDP

13              Plaintiff,

14        v.                           ORDER

15   GOVERNMENT EMPLOYEE INSURANCE
     COMPANY, a Maryland corporation,

16

17              Defendant.

18                              ----oo0oo----

19          This is an insurance policy dispute.  Plaintiff Stanley

20   Ellis brings breach of contract and breach of the duty of good

21   faith and fair dealing claims against defendant Government

22   Employee Insurance Company ("GEICO").  (See First Am. Compl.

23   ("FAC") (Docket No. 16).)  Defendant moved for summary judgment.

24   (Docket No. 22.)  Plaintiff then counter-moved for summary

25   judgment.[1]  (Docket No. 30.)  The court now considers both

26   _____

27          [1]   Plaintiff's countermotion for summary judgment
     incorporates by reference facts and arguments that he raised in
28   his opposition to defendant's initial motion.  (See Docket No.

                                     1

1  motions.

2  I.   Factual and Procedural Background

3         On November 16, 2017, plaintiff was involved in a rear-

4  end car accident with an uninsured motorist.  (Docket No. 29-1

5  Ex. T.)  Defendant at the time covered plaintiff with an auto

6  insurance policy which included uninsured motorist bodily injury

7  coverage up to $100,000.  (Javelet Decl. (Docket No. 22-4) ¶ 6.)

8  Plaintiff notified defendant of the crash on the same day.  (Id.

9  ¶ 7; Docket No. 29-1 Ex. A at 2-6.)

10        Shortly thereafter, defendant sent plaintiff a series

11 of medical record authorizations.  (Javelet Decl. ¶¶ 7(f), (i).)

12 Plaintiff objected on privacy grounds and did not sign them.

13 (See Opp'n (Docket No. 28) at 18-19.)  Plaintiff did submit his

14 paystubs to substantiate his loss of income claim, and called

15 defendant on a few occasions to provide updates on his then-

16 ongoing course of medical treatment.  (Javelet Decl. ¶¶ 7(g)-(h),

17 (k)-(m).)

18        On January 22, 2018, during a call with a claims

19 adjuster, plaintiff expressed a desire to promptly resolve his

20 claim.  (Docket No. 41-2 ¶ 7.)  The claims adjuster accordingly

21 offered plaintiff $2,000 to settle the claim.  (Id.)  Plaintiff

22 refused the offer a few days later because he was still treating

23 for his injuries and concerned about persistent pain.  (Id. ¶ 10;

24 Docket No. 29-1 Ex. A at 9.)

25        Over the next year, plaintiff updated defendant about

26 the course of his treatment and sent defendant limited medical

27

28 30-1 at 2.)  In essence, each party argues from the same record
   that judgment should enter in their favor.

2

treatment records from Kaiser Permanente, plaintiff's healthcare provider.  (Javelet Decl. ¶¶ 7(l)-(n).)  Defendant continued sending plaintiff medical record authorization forms to sign. (Id. ¶¶ 7(n)-(t).)

On February 12, 2019, defendant offered plaintiff $2,120.  (Docket No. 29-1 Ex. A at 22-23 & Ex. B at 30.) Defendant stated that it still did not have enough medical records to offer substantially more money because plaintiff still refused to sign defendant's requested authorizations.  (Javelet Decl. ¶ 7(w)-(y); Docket No. 29-1 Ex. A at 22-23.)  Plaintiff again refused the offer and said he will pursue arbitration if he does not receive a fair settlement offer, although he declined to say what a satisfactory settlement amount would be.  (Docket No. 29-1 Ex. A at 22-23.)

Over the next few months, plaintiff and defendant corresponded about obtaining more records on plaintiff's ongoing treatments.  (See Javelet Decl. ¶ 7; Docket No. 22-7 Ex. 2 at 113-121 & Ex. 3 at 248-53, 255, 258-61.)

On September 17, 2019, plaintiff demanded arbitration pursuant to the insurance policy's terms.  (Docket No. 27-7 Ex. 3 at 256.)  On November 1, plaintiff sent defendant a policy demand letter for the full policy limit of $100,000.[2]  (Id. Ex. 9 at 578-81.)  The demand broke down plaintiff's costs as follows: $55,567.10 for total medical bills, and $42,000 for anticipated future surgery.  (Id.)  Plaintiff also submitted supporting

---

[2]    This is the first time on the record that plaintiff demanded a specific dollar amount, despite previously having turned down two of defendant's offers.

3

1    medical records, including a determination by his treating

2    physician, Dr. Ardavan Aisle, that plaintiff needed surgery on

3    spinal discs in his neck.  (Id. Ex. 9 at 583-655.)  Defendant's

4    insurance adjuster, JJ Javelet, appraised plaintiff's medical

5    records and noted that "Mr. Ellis had only 1-millimeter bulges

6    [of his discs] so it was hard to understand how surgery would be

7    necessary . . . ."  (Javelet Decl. ¶ 17; Docket No. 29-1 Ex. B at

8    24-25.)  Mr. Javelet has no medical training.  (Docket No. 29-1

9    Ex. D at 48.)

10         On December 12, 2019, Mr. Javelet made plaintiff an

11   offer of $38,675, which excluded the cost of any surgical

12   intervention.  (Javelet Decl. ¶¶ 16-17.)  Mr. Javelet determined

13   that the limited records defendant had received from plaintiff to

14   date, which document pre-existing neck and back problems, raised

15   causation questions regarding plaintiff's claimed need for future

16   neck surgery.  (Id. ¶ 15.)  Mr. Javelet did not consult medical

17   experts to make this determination.  (Id. ¶¶ 16-17; Docket No.

18   29-1 Ex. D at 48.)  Plaintiff refused the offer and continued

19   pressing for arbitration.  (Javelet Decl. ¶ 17.)  Defendant

20   ultimately agreed to arbitrate the claim.  (Id. ¶ 19.)

21         On January 27, 2020, defendant subpoenaed Kaiser

22   Permanente for plaintiff's medical records.  (Docket No. 29-1 Ex.

23   M at 728-30.)  The subpoena sought "[a]ny and all medical records

24   . . . pertaining to the treatment of [plaintiff]" from 2007 to

25   the present.  (Id.)  Plaintiff objected on overbreadth grounds.

26   (Parks Decl. (Docket No. 22-6) ¶¶ 7-8.)  The parties eventually

27   reached an agreement where plaintiff's counsel would get a "first

28   look" at Kaiser's production and redact any information not

1  materially relevant to plaintiff's claim.  (Id. ¶¶ 11; Docket No.
2  22-7 Ex. 4 at 286-87.)

3         In June 2020, defendant retained its own medical
4  expert, Dr. Gary Alegre, to conduct an independent assessment of
5  plaintiff's medical needs.  (Parks Decl. ¶¶ 13-14.)  Dr. Alegre
6  examined plaintiff on June 16, 2020; shortly thereafter, he
7  issued a report concluding that plaintiff did not need surgery to
8  treat his car crash injuries.  (Javelet Decl. ¶ 34.)

9         On April 12, 2021, defendant paid plaintiff his
10  demanded maximum coverage amount of $100,000.  (Docket No. 22-7
11  Ex. 8.)  Nonetheless, plaintiff filed this suit on July 19, 2022
12  in San Joaquin County Superior Court, seeking costs that he
13  incurred to prosecute his insurance claim, interest on the
14  delayed insurance payout, and punitive damages.  (Docket No. 1
15  Ex. 1.)  Defendant removed to this court on diversity grounds.
16  (Docket No. 1.)

17  II.  Legal Standard

18         Summary judgment is proper "if the movant shows that
19  there is no genuine dispute as to any material fact and the
20  movant is entitled to judgment as a matter of law."  Fed. R. Civ.
21  P. 56(a).  A material fact is one that could affect the outcome
22  of the suit, and a genuine issue is one that could permit a
23  reasonable trier of fact to enter a verdict in the non-moving
24  party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
25  248 (1986).

26         The movant bears the initial burden of demonstrating
27  the absence of a genuine issue of material fact as to the basis
28  for the motion.  Celotex Corp. v. Catrett, 477 U.S. 317, 323

1  (1986).  The moving party can satisfy its burden by presenting

2  evidence that negates an essential element of the nonmoving

3  party's case.  Celotex Corp, 477 U.S. at 322-23.  Alternatively,

4  the movant can demonstrate that the non-moving party cannot

5  provide evidence to support an essential element upon which it

6  will bear the burden of proof at trial.  Id.  The burden then

7  shifts to the non-moving party to set forth specific facts to

8  show that there is a genuine issue for trial.  See id. at 324.

9  Any inferences drawn from the underlying facts must, however, be

10  viewed in the light most favorable to the non-moving party.  See

11  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

12  587 (1986).

13          Although both sides must argue that there are no

14  uncontested issues of material fact in filing cross-motions for

15  summary judgment, this "does not vitiate the court's

16  responsibility to determine whether disputed issues of material

17  fact are present."  United States v. Fred A. Arnold, Inc., 573

18  F.2d 605, 606 (9th Cir. 1978).  The court "must review the

19  evidence submitted in support of each cross-motion [in a light

20  most favorable to the non-moving party] and consider each party's

21  motions on their own merits."  Corbis Corp. v. Amazon.com, Inc.,

22  351 F.Supp.2d 1090, 1097 (W.D. Wash. 2004).

23  III. Discussion

24      A.   Genuine Dispute Doctrine (Claim 2)

25          Defendant invokes the genuine dispute doctrine as an

26  affirmative defense against plaintiff's bad faith claim.  (See

27  Docket No. 22-1 at 23-25.)  The genuine dispute doctrine

28  insulates an insurer from bad faith liability if delay or denial

of policy payments is due to a "genuine dispute" or "genuine issue" regarding the coverage liability or the amount of an insured's coverage claim.  See Wilson v. 21st Century Ins. Co., 42 Cal.4th 713, 723-24 (2007).  Such a dispute exists "only where the insurer's position is maintained in good faith and on reasonable grounds."  Id.  At summary judgment, the reasonableness of an insurer's position to delay or deny payment must be "undisputed or indisputable."  Id. at 724.

While the parties contest the applicability of the doctrine more narrowly as to defendant's exclusion of surgery costs (see Docket No. 22-1 at 23-25; Docket No. 28 at 18-19; Docket No. 41 at 21-22), the court finds that the doctrine is applicable at every point in time on this record.

### 1.   Initial Settlement Offers

Plaintiff contends that defendant's offers of $2,000 and $2,120 in January 2018 and February 2019, respectively, were bad faith efforts to "lowball" him in violation of defendant's obligation to place his interests on level footing with defendant's own.  (See Docket No. 28 at 13-15.)

However, the undisputed record tells a different story.  Regarding defendant's $2,000 offer, no evidence indicates that defendant had been any medical information whatsoever at the time to substantiate plaintiff's demand for payment.  (See Docket No. 42-1 ¶¶ 7-10.)  In addition, no evidence indicates that plaintiff demanded any specific amount which defendant could verify by reasonable investigation.  (See id. ¶ 7.)  Rather, plaintiff appears to have asked for a general resolution of his claim, was offered the $2,000 in light of defendant's lack of any medical

1  information, and then took time to "think about it" before
2  ultimately rejecting the offer.  (See id.)  Without any
3  substantiating medical information or a specific demand amount,
4  the court must conclude that defendant's "delay" in payment, such
5  as it is, was indisputably reasonable.

6          The court concludes similarly regarding the $2,120
7  offer.  By this point, plaintiff had submitted certain records,
8  such as paystubs, $120 in copays for hospital and physical
9  therapy visits, and health records on vitals.  (See Javelet Decl.
10 ¶¶ 7(l)-(x).)  However, plaintiff still had not submitted any
11 medical information related to the accident.  (See id. ¶ 7(x)
12 ("Stated the pages left out did not have to do with accident.
13 Stated it was regarding his blood pressure.  Advised okay, I
14 understand.  Stated Daniela can make offer based on what she has,
15 because that is all that is relevant.").)  Based on that
16 information, defendant made its $2,120 offer which comprised "$2K
17 generals and $120 in copays."  (Id. ¶ 7(y).)  Plaintiff rejected
18 this offer as well, and again declined to state how much money he
19 was asking for.  (See id. ("Asked what amount insured is asking
20 for to settle the claim.  State will go to arbitration if doesn't
21 get fair settlement.  [. . .]  Asked why he doesn't want to tell
22 us how much he is looking to settle the claim.  Stated doesn't
23 know.  Advised insured doesn't agree with my amount, I don't know
24 what amount he is looking for.  Stated will send me an e-mail
25 with the amount once he figures it out.").)

26         Accordingly, the court concludes that defendant's
27 "delay" in paying a then-undefined amount with respect to the
28 $2,000 and $2,120 offers was indisputably reasonable given the

1   uncontroverted facts in the record.

2              2.   Arbitration Demand and Policy Demand

3        The record indicates no further discussions about

4   payment after defendant's February 2019 offer of $2,120.  On

5   September 17, 2019, plaintiff demanded arbitration pursuant to

6   the policy.  (See id. ¶ 7(ee).)  Arbitration is a clear signal

7   that there is a genuine dispute over the coverage amount to be

8   resolved, and the court accordingly concludes that the genuine

9   dispute doctrine continues to apply up to this point in time.

10             3.   Cost of Surgery Dispute

11        The record indicates that plaintiff made his first

12  demand for payment on November 1, 2019 via a formal demand

13  letter, notwithstanding his demand for arbitration less than two

14  months before.  (See id. ¶ 7(gg).)  Defendant contends that the

15  genuine dispute doctrine applies here because the delay in paying

16  for anticipated surgery costs was based on Dr. Alegre's medical

17  evaluation of plaintiff and his subsequent conclusion that

18  plaintiff did not require surgery for his injuries.  (See Docket

19  No. 22-1 at 24-25.)  Plaintiff disagrees, arguing that Mr.

20  Javelet's prior decision to exclude surgery costs from the

21  December 2019 offer of $38,675 was a violation of defendant's

22  "obligation to fully and fairly investigate an insured's claim"

23  because Mr. Javelet had no medical training and consulted no

24  medical experts, and therefore lacked any good faith basis for

25  doing so.  (Docket No. 28 at 19.)

26        However, Mr. Javelet's counteroffer did not summarily

27  end defendant's investigation into plaintiff's stated need for

28  surgery -- rather, it appears to have started it.  (See Javelet

                              9

1    Decl. ¶ 16 ("After conveying the offer, in late November and

2    early December 2019, I reached out to Mr. Ellis's lawyer to

3    <u>discuss the offer and to get more information regarding the</u>

4    <u>future surgery claim</u>, but the lawyers refused to discuss the

5    claim and insisted on arbitration.") (emphasis added).)

6    Defendant issued a subpoena to Kaiser Permanente for additional

7    records a month after plaintiff's demand; while plaintiff

8    initially objected to the scope of the subpoena, defendant

9    negotiated an agreement where plaintiff's counsel would get a

10   "first look" at Kaiser's production and redact any information

11   not materially relevant to plaintiff's claim.  (Parks Decl. ¶¶ 5-

12   11; Docket No. 22-7 Ex. 4 at 286-87.)   These undisputed efforts

13   do not evince a bad faith effort or failure to investigate

14   plaintiff's new demand for surgery costs.  Nor do they reveal a

15   malicious desire to embark upon a "fishing expedition" or

16   "unlawful crusade."  (<u>See</u> Docket No. 28 at 16.)

17        Further, there is no evidence in the record to suggest

18   that Dr. Alegre's eventual examination and subsequent report was

19   infected with any bad faith from either Dr. Alegre or defendant,

20   or that Dr. Alegre's conclusion was itself unreasonable.[3]

21   Plaintiff does contend in his opposition that defendant "selected

22   biased and unreasonable experts."  (<u>Id.</u> at 19.)  However,

23

24        [3]   At best, plaintiff reveals some daylight between the
     experts' opinions.  (<u>See</u> Docket No. 29-1 Ex. U at 835-49 (Dr.
25   Aisle deposition testimony disagreeing with certain of Dr.
     Alegre's conclusions, agreeing with others, and stating that Dr.
26   Alegre's report is consistent with conclusion that surgery is
     warranted).)  However, this alone cannot establish a genuine
27   dispute as to the <u>reasonableness</u> of Dr. Alegre's opinion.  It
     merely establishes a <u>difference</u> of opinion.
28
                                    10

1  defendant correctly points out that plaintiff cites no evidence

2  to support this contention.  Neither does plaintiff substantiate

3  with evidence his implication, by way of a cite to Chateau

4  Chamberay Homeowners Ass'n v. Associated Intern. Ins. Co., 90

5  Cal.App.4th 335, 348-49 (Cal. App. 2d Dist. 2001), that defendant

6  selected Dr. Alegre in a dishonest manner, that Dr. Alegre was

7  unreasonable in any way, or that defendant's investigation into

8  the claim for surgical intervention was not thorough.  (See

9  Docket No. 28 at 18-19.)

10         As the record provides no basis for challenging the

11  good faith and reasonableness of defendant's delay in paying

12  throughout the pendency of plaintiff's claim, the court must

13  conclude that, "even under the plaintiff's version of the facts,"

14  it is "undisputed or indisputable" that defendant's basis for

15  delaying payment was reasonable.  Wilson, 42 Cal. 4th at 724.

16  Accordingly, the court will grant summary judgment for defendant

17  as to the bad faith claim.[4]

18         B.   Breach of Contract (Claim 1)

19         Neither side disputes that defendant eventually paid

20  plaintiff the full $100,000 that plaintiff demanded under the

21  insurance policy.  In addition, plaintiff does not identify any

22  express contract terms that defendant allegedly breached, nor

23  does he substantiate any damages resulting from an alleged

24  breach.[5]  Furthermore, defendant cites to five cases[6] for the

25        [4]   The court therefore need not address defendant's

26  California Insurance Code § 11580.2(o) affirmative defense.

27        [5]   Plaintiff's First Amended Complaint alleges that

28  defendant owes interest on the settlement (see Docket No. 16 ¶
    65-66), but plaintiff does not pursue that allegation further in

proposition that "where an insurer paid all policy benefits owed, there is no basis for a breach of contract claim." (See Opp'n at 14-15.)

Plaintiff argues that a breach of the implied covenant of good faith and fair dealing necessarily entails a breach of contract.[7] (See Docket No. 28 at 13-14.) Be that as it may, the applicability of the genuine dispute doctrine against plaintiff's bad faith claim renders this point moot. Accordingly, the court will grant defendant's motion for summary judgment as to the breach of contract claim.[8]

IT IS THEREFORE ORDERED that defendant's motion for

---

his present motion.

[6] Ives v. Allstate Ins. Co., 520 F. Supp. 3d 1248, 1255 (C.D. Cal. 2021)("[t]here can be no breach of contract where an insurer pays all benefits due"); Paulson v. State Farm Mut. Auto. Ins. Co., 867 F. Supp. 911, 917-18 (C.D. Cal. 1994) (holding an insured's breach of contract claim was "not viable" because the insurer "has paid [the insured] the limits of liability under his policy"); Maxwell v. Fire Ins. Exch., 60 Cal.App.4th 1446, 1449 (Cal. App. 2d Dist. 1998); Everett v. State Farm General Ins. Co., 162 Cal.App.4th 649, 660 (2008); Mason v. Allstate Ins. Co., No. SACV 13-01521-JVS, 2014 WL 212245, at *3 (C.D. Cal. 2014).

[7] See, e.g., Archdale v. American Internat. Specialty Lines Ins. Co., 154 Cal.App.4th 449 (Cal. App. 2d Dist. 2007) ("[covenant of good faith] is an implied-in-law term of the contract and its breach will necessarily result in a breach of the contract"); Deerpoint Group, Inc. v. Agrigenix, LLC, 345 F. Supp. 3d 1207, 1234 (E.D. Cal. 2018) (Ishii, J.) ("a breach of the implied covenant is necessarily a breach of contract") (cleaned up); Gentry v. State Farm Mut. Auto. Ins. Co., F.Supp.2d 1160, 1171 (E.D. Cal. 2010) (Karlton, J.) ("An unreasonable delay in payment of benefits owed under a contract can support a claim for a breach of contract.").

[8] The court need not consider defendant's material misrepresentation argument because the court grants summary judgment for defendant on all claims on other grounds.

1  summary judgment (Docket No. 22) be, and the same hereby is,

2  GRANTED.

3          IT IS FURTHER ORDERED that plaintiff's countermotion

4  for summary judgment (Docket No. 30) be, and the same hereby is,

5  DENIED.

6  Dated:   March 19, 2024

7

WILLIAM B. SHUBB
8  UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13